UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **CHRISTIAN DANIEL**, <br><br> Defendant. | Case Nos. 17-cr-00233-5-TNM <br> 20-cv-00820-TNM |

**MEMORANDUM OPINION**

Christian Daniel pled guilty before this Court to conspiracy to distribute heroin and received a 120-month prison sentence. He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that he received ineffective assistance of counsel during sentencing and that the Bureau of Prisons ("BOP") should have calculated his sentence as running concurrent to a sentence he later received for violating a term of supervised release. *See* Mot. to Vacate ("Mot."), ECF No. 113. Unconvinced by Daniel's claims, the Court will deny the motion.

**I.**

Daniel has an extensive criminal history, only some of which is relevant here. In 2003, Daniel was convicted of armed robbery in the Superior Court of the District of Columbia and sentenced to seven years in prison and five years of supervised release. Presentence Investigation Report ("PSR") ¶ 48, ECF No. 92. He began a term of supervised release for that conviction in December 2011, but the U.S. Parole Commission issued a warrant for his arrest in June 2014 because he violated a condition of release. Gov't Opp'n to Mot. to Vacate ("Opp'n")

1

Ex. 1 at 1, ECF No. 117-1.[1]

Beginning around July 2015, the Federal Bureau of Investigation started investigating drug trafficking activity in the Birney Place, SE, neighborhood of Washington, D.C. Proffer of Proof at 4, ECF No. 71. By intercepting wire and electronic communications, the FBI learned the identity of several individuals distributing heroin, one of whom was Daniel. *Id.* On August 3, 2017, law enforcement officers executed a search warrant at a house in Lanham, Maryland, that they had surveilled and believed was involved in the conspiracy. *Id.* at 5. Daniel was inside the residence with 70 grams of heroin and drug trafficking paraphernalia. *Id.* Officers arrested Daniel at the scene based on his involvement in the drug trafficking conspiracy and the outstanding arrest warrant issued in 2014 for his violation of supervised release. *Id.*; Opp'n Ex. 2 at 1, ECF No. 117-2.

In November 2018, a federal grand jury returned a superseding indictment against Daniel, charging him with one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, Phencyclidine, Methamphetamine, and Heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), (b)(1)(C), and 846. *See* Superseding Indictment at 1–2, ECF No. 61. Daniel pled guilty to the charge as part of a plea agreement.[2]

At the sentencing hearing, the Court calculated a total offense level of 14 and determined that Daniel was a career offender, producing an advisory guideline range of 188 to 235 months in prison. Sentencing Transcript ("S. Tr.") at 12, 15, ECF No. 118. Both defense counsel and the Government requested a 70-month sentence, while the U.S. Probation Office recommended 188

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system.
[2] *See* Plea Agreement, ECF No. 70. The parties had settled on a plea agreement under Rule 11(c)(1)(C) that provided for a 70-month sentence, but the Court rejected that agreement. The ultimate plea agreement was not under Rule 11(c)(1)(C). *Id.* at 5–6.

months. *Id.* at 16, 17, 23. For its part, the Court highlighted Daniel's long criminal history and repeated recidivism before ultimately imposing a sentence of 120 months. *Id.* at 46–50.

Near the end of the hearing, Daniel requested that the Court clarify that he was in fact arrested on August 3, 2017, and in custody since that date, despite the PSR stating that his arrest occurred in February 2018 when he was rearraigned. *Id.* at 53–54. Daniel expressed concern that he would not get credit for the full time he was in custody. *Id.* at 54, 56. The Court agreed that the probation office should correct the PSR to list an arrest date of August 3, 2017, but it added: "Whether you get credit for that earlier time in this case or another case—that's not something that I can determine here." *Id.* at 56. Daniel also asked the Court to permit him to seek a sentence reduction after completing substance abuse treatment in prison. The Court declined. *Id.* at 56–57.

In December 2019, Daniel resolved his supervised release violation from 2014 by agreeing to an Expedited Revocation Proposal. Opp'n Ex. 2 at 1, ECF No. 117-2. Under the agreement, Daniel accepted the U.S. Parole Commission's determination that he serve "a new term of imprisonment of 31 months from the date that the warrant was executed 08/04/2017." *Id.* The document also specified that Daniel was "accepting responsibility for [his] conduct, waiving [his] right to a revocation hearing, and waiving [his] right to appeal the decision." *Id.* According to Daniel and to BOP records, BOP has since aggregated Daniel's 31-month term for his supervised release violation and his 120-month term here to produce a 151-month term of incarceration, beginning from August 4, 2017. *See* Mot. at 11; Opp'n Ex. 4 at 3, ECF No. 117-4.

Earlier this year, Daniel filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Mot. at 1. The Government timely responded in opposition, Opp'n at

11, and Daniel replied.  Reply Br., ECF No. 121.  The motion is now ripe.[3]

## II.

Under § 2255, a prisoner sentenced in federal court may move the sentencing judge to vacate, set aside, or correct the sentence if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Such a motion will be granted rarely given the premium placed on the finality of judgments as well as the opportunities prisoners have to raise most of their objections during trial or on direct appeal. *United States v. Koumbairia*, 17 F. Supp. 3d 81, 84 (D.D.C. 2014).  So to obtain collateral relief a prisoner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  The defendant bears the burden of proving his claims by a preponderance of the evidence. *Koumbairia*, 17 F. Supp. 3d at 84.

When faced with a timely § 2255 motion, a district court generally must "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  But when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a district court need not conduct an evidentiary hearing before dismissing the motion. *Id.*; *accord United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996); *see also* Rules Governing § 2255 Proceedings, Rule 4(b) (if it

---

[3]  This Court has jurisdiction under 28 U.S.C § 2255(a).  Under § 2255(f), a defendant generally must file for relief within one year of the date on which his conviction becomes final.  Because Daniel did not file a direct appeal, his conviction became final on April 4, 2019, 14 days after the filing of the Judgment.  *See* Fed. R. App. P. 4(b)(1)(A)(i), (b)(6) (permitting 14 days from entry of judgment on docket to file notice of appeal).  Daniel filed his § 2255 motion on March 25, 2020, which was within the one-year time limit, so his motion is timely.

"plainly appears . . . that the moving party is not entitled to relief, the judge must dismiss the motion.").[4]

### III.

### A.

Daniel first contends that his counsel provided ineffective assistance. The Sixth Amendment guarantees "the right to the effective assistance of counsel," *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and a habeas petitioner may raise a claim of ineffective assistance of counsel for the first time in a § 2255 motion even if he could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To prevail, the petitioner must establish both that counsel's performance was deficient and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 686. On the former, counsel's performance must be considered objectively, and the petitioner must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. On the latter, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687.

Prejudice is not established where demonstrated errors merely had "some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Failure to make the required showing of either deficient performance or sufficient prejudice

---

[4] While there is no constitutional right to legal representation in habeas corpus proceedings, a court may appoint counsel to represent a *pro se* § 2255 petitioner if the interests of justice so require. *United States v. Waite*, 382 F. Supp. 2d 1, 2 (D.D.C. 2005); *see* 28 U.S.C. § 2255(g). The Court finds that the interests of justice do not so require here.

dooms an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

Daniel asserts that his counsel performed ineffectively by failing to ask the Court to impose the sentence in this case concurrently to the sentence Daniel would later receive for violating his term of supervised release. Mot. at 3–4. According to Daniel, his attorney believed that the Court lacked the power to do so and was ignorant of the contrary case law. *See, e.g.*, *Setser v. United States*, 566 U.S. 231, 236–37 (2012) (recognizing that district courts may impose sentences consecutive or concurrent to anticipated state sentences that have not yet been imposed).

The problem for Daniel is that, even if this Court did conclude that counsel's performance was deficient—which it has not—Daniel has failed to show that he suffered any prejudice as a result. Under 18 U.S.C. § 3584(a), "terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." While the statute is "neutral as to whether concurrent or consecutive sentences should be imposed," *United States v. Ayers*, 795 F.3d 168, 174 (D.C. Cir. 2015), consecutive sentences "will be assumed in absence of indication by the sentencing judge." *Setser*, 566 U.S. at 234.[5] So to succeed in proving prejudice, Daniel must show that there is a "substantial" likelihood that, had counsel raised the issue, the Court would have departed from the default and imposed the 120-month sentence concurrently to the then-speculative sentence that Daniel would receive in D.C. Superior Court. *Harrington*, 562 U.S. at 112.

He cannot. To be sure, after considering the § 3553(a) factors and counsel's arguments, the Court varied downward in sentencing Daniel to 120 months, noting that it was giving "a

---

[5] In deciding whether to exercise its discretion to impose a concurrent sentence, the sentencing court must consider the factors in § 3553(a), as it does for other aspects of the sentence. *See* 18 U.S.C. § 3584(b); *United States v. Williams*, 158 F. Supp. 3d 1, 3 (D.D.C. 2016).

sentence that is less than [it] expected to give coming in here." S. Tr. at 48. But the Court also announced that Daniel had received "a lot of breaks in [his] life, and they're over." *Id.* at 49. Daniel's criminal history especially concerned the Court, as it explained: "Sir, it looks to me like nothing has gotten through to you. When you are on pretrial supervision, you violate[] it. When you are on probation or supervised release, you commit new crimes. When you are incarcerated, you get in trouble there too." *Id.* at 46. More, the Court flatly rejected Daniel's request for a chance to seek a sentence reduction after completing programming in prison, explaining that it had already given "a generous sentence" because Daniel "deserve[d] 188 months." *Id.* at 57.

Daniel's motion offers no reason to think that the Court would have gone one step further and imposed a concurrent sentence. That determination would have preemptively eliminated any punishment Daniel would serve for violating the supervised release imposed by the D.C. Superior Court. The Court can state with confidence that it would not have desired that result. *Cf. United States v. Awoleye*, 16-CR-177, 2018 WL 10397033, at *1 n.1 (D.D.C. Jan. 9, 2018) (rejecting possible prejudice in ineffective assistance claim by sentencing judge confirming that he "would not have departed downward any further, even if counsel had requested a departure"). So there is no "reasonable probability that . . . the result of the proceeding would have been different" had defense counsel asked about a concurrent sentence. *Strickland*, 466 U.S. at 694; *see also United States v. Hopkins*, 568 F. App'x 143, 148 (3d Cir. 2014) (affirming dismissal of ineffective assistance claim where counsel failed to argue that federal sentence should run concurrent with yet-to-be-imposed state sentence because there was no "'reasonable probability' that the District Court would have imposed a concurrent sentence even if counsel had asked").

Mindful that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one,"

7

the Court stops here. *Strickland*, 466 U.S. at 697. Daniel has failed to show that any prejudice resulted from his counsel's alleged errors at sentencing, so his ineffective assistance claim fails.

**B.**

Daniel next asserts that BOP erroneously aggregated his sentences to a term of 151 months in prison rather than treating his 120-month and 31-month sentences as running concurrently. Mot. at 5–6, ECF No. 113. Daniel's arguments on this front are nebulous. But at bottom he claims that although this Court did not explicitly impose concurrent sentences, the BOP should have treated his two sentences as concurrent because they were slated to run from the same day: His arrest on August 3, 2017.[6] *Id.*

*First*, a § 2255 motion is the wrong vehicle for objections to BOP's calculation of Daniel's sentence and credits. "A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper vehicle for challenges to the execution of a defendant's sentence, the administration of his sentence, or the length of his confinement." *United States v. Queen*, 17-cr-58, 2020 WL 2748495, at *5 (D.D.C. May 27, 2020); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004) (explaining scope of § 2241). And a habeas challenge to a prisoner's present physical confinement must name as the respondent the custodian of the prisoner, typically the warden of the prison where he resides. *See Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810–11 (D.C. Cir. 1988) (en banc).

Should Daniel wish to file such a challenge, he may do sue in the district where he is confined. *See Stokes v. U.S. Parole Com'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004) ("[I]n habeas

---

[6] Daniel's physical arrest occurred on August 3, 2017, but that BOP records list the beginning of his aggregated sentence as August 4, 2017, *see* Opp'n Ex. 4, ECF 117-4, which is also the date the supervised release revocation warrant was executed according to Daniel's Expedited Revocation Proposal. *See* Opp'n Ex. 2, ECF 117-2.

cases involving present physical confinement, jurisdiction lies in only one district: the district of confinement.") (cleaned up); *see also* 16A Stacy L. Davis, et al., *Fed. Proc.* § 41:137 (L.Ed. 2017) ("A claim for credit against the sentence attacks the computation and execution of the sentence rather than the sentence itself, and review by way of habeas corpus must therefore be sought in the district of confinement rather than in the sentencing court.").[7]

*Second*, if Daniel invites this Court to retroactively designate his sentences to run concurrently, the Court declines do so.  The Court did not implicitly intend for the sentences to run concurrently merely by agreeing to correct the date of the arrest.  Nor has BOP contacted the Court for clarification on anything about the sentence imposed.  *Cf. United States v. Mulligan*, 2014 WL 5768758, at *1–2 (S.D.N.Y. Nov. 4, 2014) (retroactively designating part of federal defendant's sentence to run concurrently with state sentence after receiving request for clarification by BOP).  The Court stands by the sentence that it imposed.

## IV.

For these reasons, the Court will deny Daniel's § 2255 motion.  A separate Order will issue.

Dated:  October 14, 2020                                         TREVOR N. McFADDEN, U.S.D.J.

---

[7] Even if Daniel had properly raised his claims here, the Court discerns no merit to his arguments.  Designating the arrest date as August 3 here did not prevent Daniel from receiving a prison sentence for violating his supervised release.  BOP did not "eliminate court determined credit," Mot. at 11, when it aggregated the two sentences, as it must.  *See* 18 U.S.C. § 3584 ("Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.").  Nor is BOP erroneously forcing Daniel to serve sentences "in installments," *see* Mot. at 11, by aggregating them in accordance with the statute.