**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**CHRISTIAN DANIEL**,<br><br>Defendant. | Case No. 1:17-cr-233 (TNM) |

**<u>MEMORANDUM ORDER</u>**

Christian Daniel is serving a 120-month prison sentence for conspiracy to distribute heroin.  He resides at Federal Correctional Institute (FCI) Hazelton.  Daniel seeks compassionate release under 18 U.S.C. § 3582(c), claiming that his medical conditions put him at a high risk of serious illness if he contracts COVID-19.  Upon consideration of Daniel's filings, the relevant law, and the entire record of the case, the Court denies Daniel's motion.

**I.**

The Court briefly recounts the factual background of this case, which has been detailed elsewhere.  *See United States v. Daniel*, No. 17-cr-00233, 2020 WL 6060311 (D.D.C. October 14, 2020).  A grand jury returned a one-count superseding indictment against Daniel, charging him with conspiracy to distribute and possess with intent to distribute cocaine base, phencyclidine, methamphetamine, and heroin.  *See* Indictment 1, ECF No. 61.[1]  Daniel eventually pleaded guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture containing a detectable amount of heroin.  *See* Plea Agreement 1, ECF No. 70; Judgment, ECF No. 99.  At the sentencing hearing, the Court "determined that

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system.

Daniel was a career offender, producing an advisory guideline range of 188 to 235 months in prison." *See Daniel*, 2020 WL 6060311, at *1. The Court ultimately sentenced him to 120 months in prison and five years of supervised release. *See Daniel*, 2020 WL 6060311, at *1; Judgment 2–3.

Concerned about his medical conditions and susceptibility to COVID-19 at FCI Hazelton, both Daniel and his appointed counsel filed motions for Daniel's compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Emer. Mot. for Compassionate Rel. (Def.'s Mot.), ECF No. 126; Def.'s Emer. Mot. for Compassionate Rel. (Suppl. Mot.), ECF No. 133. Daniel seeks a sentence reduction to either time-served or 70 months. To supplement his motions, Daniel filed a letter explaining the difficult circumstances he has faced during the COVID-19 pandemic. *See* Suppl. to Mot. for Compassionate Rel. (Letter), ECF No. 140.

## II.

A defendant seeking compassionate release "has the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Holroyd*, 464 F. Supp. 3d 14, 17 (D.D.C. 2020). Sentence reduction is appropriate only if the defendant has first exhausted available administrative remedies. 18 U.S.C. § 3582(c)(1)(A). If all administrative remedies have been exhausted, a court may reduce a term of imprisonment if, "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, . . . it finds that . . . extraordinary and compelling reasons warrant such a reduction." *United States v. Jackson*, 2021 WL 1299439, at *1 (D.D.C. Apr. 7, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Among those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes." 18 U.S.C. § 3553(a)(1)–(2). Thus, "courts . . . consider the anticipated effect of compassionate

release on crime and public safety for defendant-filed motions as part of their weighing of relevant considerations." *United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021).

### III.

Both parties agree that Daniel exhausted his administrative remedies under § 3582(c)(1)(A). *See* Def.'s Mot. 20; Suppl. Mot. 5; Opp'n to the Def.'s Em. Mot. for Comp. Release (Opp'n) 11, ECF No. 134. So the only questions for the Court are whether Daniel has shown extraordinary and compelling circumstances warranting a sentence reduction, and whether such a reduction accords with the factors set forth in § 3553(a).

### A.

Daniel argues he should be released because his "serious medical conditions alone, and especially when combined with his susceptibility to COVID-19, are extraordinary and compelling circumstances." Suppl. Mot. 8. He says he suffers from chronic kidney disease, hypertension, gastro-esophageal reflux disease, asthma, and a history of substance abuse. Def's Mot. 1; Suppl. Mot. 4. Daniel asserts that "he is not receiving proper treatment for his conditions," Suppl. Mot. 4, and that because FCI Hazelton has experienced an "increase of COVID-19 cases" he is more likely to become severely ill, Reply 2. In a letter to the Court, Daniel also alleged that lockdown conditions at FCI Hazelton have contributed to his deteriorating health. *See* Letter 2–3.

The Court finds these circumstances do not constitute an extraordinary and compelling reason to reduce Daniel's sentence. Daniel points to actions taken by FCI Hazelton in August 2021 in response to an "increase in positive COVID-19 cases" as evidencing an unsafe environment, Reply 2, but BOP currently reports only two active cases at the facility. *See*

*COVID-19 Cases*, Federal Bureau of Prisons (October 29, 2021),

https://www.bop.gov/coronavirus/.  More, the fact that FCI Hazelton acted to mitigate the spread

of COVID-19 when there was an uptick of cases cuts against Daniel's argument that the facility

is unsafe.  *See Holroyd*, 464 F. Supp. 3d at 18–19.  To the extent he argues BOP's general

response to COVID-19 has been inadequate, *see* Suppl. Mot. 9–12, the Court is unpersuaded.

"[T]he 'mere existence of COVID-19 in society and the possibility that it may spread to a

particular prison alone cannot independently justify compassionate release.'"  *Dempsey*, 2021

WL 2073350, at *3 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  COVID-

19 has had devastating and unpredicted effects throughout our society and has at times caught

actors at all levels of government flat-footed.

  To be sure, Daniel suffers from certain medical conditions, such as chronic kidney

disease, which make him more likely to suffer severe illness from COVID-19 than someone

without those conditions.  *See* Suppl. Mot. Ex., at 4–7, ECF No. 133-2; Opp'n 14.  When Daniel

moved for compassionate release, he had not been vaccinated for COVID-19.  Opp'n 16.  The

Government acknowledges, and the Court agrees, that had Daniel not been offered the vaccine,

he may have been able to show extraordinary and compelling circumstances.  *Id.*  But Daniel was

offered the vaccine and, after first refusing, *see id.*, received his second dose of the Moderna

vaccine several months ago, Reply 2.  Courts in this jurisdiction have recognized that the

Moderna vaccine mitigates both the risk of contracting COVID-19 and the severity of the illness.

*See United States States v. Edwards*, No. 03-234, 2021 WL 3128870, at *3 (D.D.C. July 22,

2021); *United States v. Martinez*, No. 1:05-cr-445-1, 2021 WL 2322456, at *1–2 (D.D.C. June 7,

2021).  Daniel has offered nothing to suggest the vaccine will not afford him similar protection.

"[T]he Court takes notice of the real and serious threat that the COVID-19 poses." *Holroyd*, 464 F. Supp. 3d at 18.  And it appreciates that the circumstances Daniel has faced while in prison have been far from ideal.  *See* Letter 1–2; Reply 2.  But COVID-19 restrictions have affected everyone in society, not just prisoners.  Neither Daniel's medical conditions nor his risk of contracting COVID-19 would evaporate were he released from prison.  *See Jackson*, 2021 WL 1299439, at *2; *Holroyd*, 464 F. Supp. 34 at 19.  Without more, the Court cannot conclude Daniel's circumstances are extraordinary and compelling.

**B.**

Even if Daniel "*had* presented 'extraordinary and compelling reasons' for release, the Court may reduce his term of imprisonment only if the balance of the § 3553(a) factors favor his release."  *United States v. Dempsey*, 2021 WL 2073350, at *4 (D.D.C. May 24, 2021) (quoting *Edwards*, 2020 WL 3128870, at *4).  The Court commends the steps Daniel has taken to rehabilitate himself, including completing a drug education course and enrolling in several other programs at FCI Hazelton.  Opp'n 25; Reply 8; Letter 2.

His letter shows that he has taken personal responsibility for his actions and is remorseful.  *See* Letter 1.  Daniel's desire to take care of his mother and play a role in his daughter's life is also admirable, as are his attempts to secure post-release employment.  *Id.* at 2, 4–5.  And several letters written on Daniel's behalf exemplify his personal growth and positive impact he has had on other inmates.  Suppl. Mot. Ex., at 10–19.

But the offense Daniel pleaded guilty to—conspiracy to distribute over 100 grams of heroin—is a grave crime.  As explained at his sentencing hearing, the country "is in the middle of an opioid epidemic," and those who deal heroin either directly or indirectly contribute to the

problem. *See* S. Tr. 37, ECF No. 118. More, when law enforcement agents searched Daniel's residence, they located "a Smith and Wesson gun box containing a pistol magazine, a pistol lock, . . . and miscellaneous rounds of ammunition." Proffer of Proof 5, ECF No. 71. Given the evidence that Daniel had access to a firearm, combined with Daniel's substantial role in the drug conspiracy, as shown by the 70 grams of heroin and over $1,000 of cash found during his arrest, *see id.*, the need "to protect the public from further crimes of the defendant" weighs heavily against a sentence reduction, 18 U.S.C. § 3553(a)(2)(C).

Still more, Daniel's history of criminal behavior and repeated recidivism militate against release. Daniel is a "career offender" with "an extensive criminal history," including a conviction for armed robbery. *Daniel*, 2020 WL 6060311, at *1; *see* Final Present. Inv. Rep. ("PSR") 11–18. In 2012, Daniel was convicted for possession with intent to distribute narcotics after officers found heroin and over $11,000 worth of crack cocaine in his bedroom. PSR 18. Daniel's disciplinary record while in prison is also less than perfect, *see* Suppl. Mot. 16 & Ex., at 53, and when Daniel was previously released from custody he violated the conditions of his supervised release, adding to the many instances of conduct that weigh against a sentence reduction, *Daniel*, 2020 WL 6060311, at *3. As noted at sentencing, "for the last 20 years . . . [t]he only significant stretches of [Daniel's] adult life when" he has not caused trouble are when he has "been locked up." S. Tr. 40.

Daniel says that he should be released because, besides his rehabilitation discussed above, his release plan insulates him from endangering society. Reply 8; Letter at 4–5. Daniel's plan to live with his mother and take advantage of his "two possible job offers," Letter at 4–5; Reply 8, mitigates only some concerns about his potential release, and the § 3553(a) factors on balance strongly favor denying his motion for reasons already mentioned. Daniel has been

convicted for multiple drug distribution offenses, and "narcotics can be sold from one's home at any hour." *Holroyd*, 464 F. Supp. 3d at 21. The offense for which Daniel is currently convicted produced an advisory guideline sentencing range of 188 to 235 months in prison, from which he already received a downward variance. *Daniel*, 2020 WL 6060311, at *1. Daniel's release would therefore conflict with the need for his sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," 18 U.S.C. § 3553(a)(2)(A), and "afford adequate deterrence for criminal conduct," *id.* § 3553(a)(2)(B). Given Daniel's serious offense and criminal background, a sentence reduction is unwarranted.

## IV.

For these reasons, it is hereby **ORDERED** that the Defendant's Motion for Compassionate Release is DENIED.

Dated: November 18, 2021

_____
TREVOR N. McFADDEN, U.S.D.J.